# COUNTY OF KENNEBEC.

## JONATHAN N. HARRIS *versus* SOMERSET AND KENNEBEC RAILROAD COMPANY.

Where a corporation is summoned as trustee, service of the writ by leaving a copy at the place of last and usual abode of the treasurer or other proper officer is sufficient.

But after the corporation has appeared, submitted to the jurisdiction of the Court and made disclosure, and judgment has been entered, it is too late to object to a service defective in such a particular.

Where A contracted with a corporation to build a railroad for a gross sum, to be paid monthly as estimates of the work done should be made, with a proviso that $29,000 of the whole sum should be for land damages, to be paid and settled by the corporation without unnecessary delay, so much of the land damages as had been actually paid by the corporation before being summoned as trustee of A, is to be allowed as a payment to A. The unsettled balance cannot be treated as paid to A, although long previously charged to him by the corporation.

Where the officer's return on a trustee writ shows that it was served on the trustee at a stated hour, a payment made by the trustee to his principal on the same day is to be regarded as subsequent, in the absence of proof to the contrary.

A contracted with a corporation to build a railroad for $287,000, 80 per cent. to be paid monthly on estimates of the work done, and $75,000 of the whole sum, including the 20 per cent. reserved, to be paid in stock, — time of payment not stipulated. A abandoned the contract without completing it, and the company was summoned as his trustee : — *Held*, that the company had a right to deliver an amount of stock proportioned to the work done, and did not waive that right by making full payment for several months in cash.

Where a railroad corporation was charged as trustee of an employee, whose claim was payable in stock, a tender of certificates of a sufficient number of shares duly signed, and filled out, except the name of the holder, but not separated from the treasurer's book, is sufficient, *it seems.*

SCIRE FACIAS.    On REPORT by RICE, J.

The plaintiff was a creditor of John T. Cahill, and, as such, brought an action against Cahill, and summoned the defendants as trustees.

It appears by the defendants' disclosure, made at August term, 1857, that they had a written contract with Cahill and John Healey, dated August 9, 1853, for the construction of their railroad, by which the contractors were to receive $287,000, of which $75,000 was to be paid in stock at the par value. The work done each month was to be estimated by the engineer, and, within ten days after the contractors presented his certificate monthly, the corporation was to pay them "eighty per cent. of the amount then due for work specified in such certificate, and, when the whole work contracted for shall have been accepted as completed according to contract, the balance due shall then be paid to the contractors." The corporation was to settle all land damages, and to "deduct therefor from the payment to be paid to the said Healey and Cahill the sum of $29,000;" the corporation to use all reasonable diligence and dispatch in adjusting the damages, and to be holden for damages arising from delay by litigation concerning them. The 20 per cent. reserved monthly was to make a part of the $75,000 payable in stock.

Healey and Cahill did not complete the contract, but abandoned it after some months' labor under it.

At the time of the service of the plaintiff's writ, the corporation had charged them with the whole sum of $29,000 for land damages, and had paid on account thereof $13,917,15; and afterwards paid more than enough to make up the balance, prior to making their disclosure.

The trustee writ was served on the corporation October 10, 1854, at 6½ o'clock in the forenoon.

The engineer's monthly estimates of work done, including that of Oct. 4, 1854, amounted at that time to $139,022,13, of which 20 per cent., reserved monthly, was $27,802,40, and the balance $111,209,73. The corporation claimed to have paid to the contractors or their order $134,269,42, including $29,000 land damages charged, $11,067,55 paid Oct. 10th, after the service of the plaintiff's writ, and $1845,16, which they had agreed to pay to other parties prior to the service.

They had also paid the engineer $723,75. All the payments had been made in cash.

The corporation claimed to have sustained a loss of over $20,000 by the abandonment of the contract.

Amongst the papers accompanying the disclosure, was a schedule of the monthly estimates and payments up to October, 1854. In some months the payments were more, and in others less, than the estimates of work done.

On this disclosure, the Court adjudged the corporation to be trustees of Cahill, and judgment was entered, execution issued, and demand made by a proper officer.

The writ of *scire facias* against the present defendants, as trustees of Cahill, was dated October 23, 1857.

It was in evidence that, when the officer made demand on the treasurer of the corporation, on the execution against Cahill, the treasurer tendered him certificates of twenty-six shares of the stock of the company, which he refused to take. The certificates were in the treasurer's book, signed and filled out, except the name of the holder.

By agreement, the evidence was reported for the full Court to draw such inferences and make such decision as law and evidence should require.

*J. Baker,* for the plaintiff, argued that the land damages, $29,000, made no part of the monthly payments, but merely reduced the gross amount of the contract from $287,000, to $258,000. By the contract 80 per cent. is payable absolutely and unconditionally, without regard to the land damages. *Williams* v. *A. & K. R. R. Co.,* 36 Maine, 201. The payment of $11,067,55, after the service of the writ, was not to be included in ascertaining the indebtedness of the corporation when the writ was served. It is not pretended that the treasurer did not know of the service. The amount due the contractors when the writ was served was $16,292,09, of which one-half, $8146,04, was due Cahill. The interest of a joint contractor can be reached by trustee process. *Whitney* v. *Monroe,* 19 Maine, 42.

2. How is the amount due to be paid? The presumption of law is that it is payable in money. 18 Maine, 187; 25 Maine, 256; 35 Maine, 227; Cush. Tr. Proc., 33, § 61. The contract provides no other mode. $75,000, including the 20 per cent. reserved, is to be paid in stock, but when? If at the completion of the work, it does not affect this case. If to be distributed equally over all the payments, there was due to Cahill at the time of service $6303,00 in stock, leaving a balance of $1843,04, due him in money. But, if a proportion was payable each month in stock, the corporation might waive the privilege, and it appears they did so, by making all their payments in money. Having waived it, they lost it forever.

3. If the defendants claim to have been damaged by Healey and Cahill not completing their contract, the reply is that the monthly account shows that the corporation first violated the contract, they not having fully paid the estimate for July, August and September, 1854, by $2581,60. By the contract, the 20 per cent. reserve is the only fund to which the defendants can look for satisfaction of such damages.

4. The tender of the stock was insufficient. The certificates should have been filled with the plaintiff's name and offered to the officer. If part was due in money, both stock and money should have been tendered. If all in money, there was no valid tender made.

*J. M. Meserve,* for the defendants.

1. The trustee writ was not legally served. A copy should have been left *with* the treasurer or other officer, instead of at his place of abode. R. S., 1841, c. 114, § 43; c. 119, § 8. There being no service, all the payments made by the corporation prior to their disclosure are valid, and they are entitled to a discharge.

2. There was nothing due to Cahill at the service of the writ. The labor of the contractors amounted to $139,012,13, of which $36,327,21 was payable in stock, or $8524,81, besides the 20 per cent. reserved. They were entitled to de-

mand certificates of stock to the latter amount. They are not the less owners for not having certificates, the certificate being only evidence of ownership. The assumption that the corporation had waived their right to pay in stock by making payments in cash is unfounded, for there had been no demand and refusal, without which there could be no waiver.

The liability of the corporation to deliver certificates of stock under their contract does not make them trustees of Cahill. *Bigelow* v. *York & Cumberland R. R. Co.*, 37 Maine, 320. It was property which could be attached, and therefore trustee process will not lie. They were not liable as trustees for the 20 per cent. reserved, as it was not due and was contingent. *Williams* v. *A. & K. R. R. Co.*, 36 Maine, 201; *Dailey* v. *Jordan*, 2 Cush., 390.

The balance, $102,684,92, had already been largely overpaid, the payments amounting to $134,993,17, including $29,000, land damages, and $11,067,55, paid October 10. The $29,000 was as much a part of the contract price as any portion of it. There can be no doubt as to $13,917,15, paid prior to the service. It was a payment in effect to the contractors. The corporation being liable for the unpaid balance to the land owners, when the writ was served, it is contended that the whole sum of $29,000 should be allowed as paid. The contract stipulation that that sum should be paid to the land owners, operated as an order of the contractors in favor of those owners, accepted by the corporation. The $29,000 was charged by the defendants to the contractors a year and a half before the service, and they had acquiesced in it for that period.

As to the $11,067,55 paid Oct. 10:—if paid before the service, or before knowledge of the service, it was rightly paid. The service was by copy left at the treasurer's last and usual abode. The inference is that he was absent at the time. If absent, it may be justly presumed that he had no knowledge of the service prior to payments made the same day. That being the case, the payments made Oct. 10 are to be allowed to the defendants.

The question of tender becomes unimportant, there being nothing due to Cahill from the defendants.

The defendants having been examined in the original suit, and wrongfully charged as trustees, are entitled to costs. R. S., c. 86, § § 71, 72.

The opinion of the Court was drawn up by

TENNEY, C. J.—Healey and Cahill, the contractors to build and complete the road suitably for the laying of the rails, with certain exceptions, abandoned their operations before the duties undertaken were performed. Cahill being indebted to the plaintiff, was sued by him, and the company was summoned as his trustee, and made disclosure in the original action, by its president, Joseph Eaton, and was charged as such; and judgment was rendered against the principal defendant, and the goods and effects and credits he had in the hands and possession of the company, as trustee. Upon an execution issued thereon, and put into the hands of the sheriff of the county of Kennebec, a demand was made of the trustee for the goods, effects and credits so deposited, within thirty days of the rendition of the judgment. The company were proceeding, by its officers, to deliver certificates of twenty-six shares of their capital stock to the sheriff, who, acting under the direction of the plaintiff's attorney in the matter, declined to receive the certificates.

So far as the company were entitled to make payment in the stock, it does not appear that any controversy now exists touching the tender thereof. But, in this action, it is contended, that the company was indebted to the principal defendant in cash, at the time of the service of the original writ upon him, and, no cash having been in any manner offered to the sheriff at the time of the demand, the plaintiff is entitled to recover in this action.

A question is presented, and argued by the counsel for the defendants, whether any legal service was made upon the company, as trustee, in the original action. It is contended that there was not, and that the question is open. It appears

that an attested copy of the original writ was duly left by the officer *with the treasurer* of the company. By R. S., 1841, c. 114, § 24, where goods are attached, a separate summons shall be *delivered* to the defendant, or left at his *dwellinghouse* or *place of last and usual abode,* &c. By section 26 of the same chapter, it is provided, "in all cases where the process is by original summons, as against executors, administrators or guardians, in ejectment, dower, scire facias, error, review, and all other civil actions, wherein the law does not require a separate summons to be left with the defendant, the service thereof, by the proper officer, shall be sufficient, either by his reading the writ or original summons to the defendant, or by giving him in hand, or leaving at his dwellinghouse or place of last and usual abode, a certified copy thereof, &c. By section 43, in suits against corporations, the summons shall be served by leaving a copy of it with the president or clerk, cashier, treasurer, or any general agent or director, as the case may be, of the corporation sued.

Writs against corporations, which are summoned as trustees, shall be served on them as other writs against corporations. R. S., 1841, c. 119, § 8. The provision in section 26, of chapter 114, is general. And the mode of service, pointed out in section 43, relates to the persons on whom the service may be made, and was evidently not designed to change the mode provided in section 26. In comparing section 24 with section 26, it will be seen, that the latter section provides that, when "the law does not require a separate summons *to be left with the defendant,*" the service thereof, &c. This shows that the words "to be left with the defendant" is the same thing as being "delivered to the defendant, or left at his dwellinghouse or place of last and usual abode," under section 24.

But, if the service was defective in the particular pointed out by the defendants' counsel, the appearance of the company, and submitting to the jurisdiction of the Court and making disclosure, and judgment being entered, would certainly obviate the defect, so far as the matter is now before us; and it cannot be considered, under the argument in the

case, that the Court shall render such judgment as the law and facts require, an open question.

The original disclosure was full, and thereupon we are to decide whether the plaintiff can prevail in this action of *scire facias.* The amount earned by the contractors is not in controversy. But the dispute is, touching the allowance of certain sums, claimed by the company as having been paid, before the service of the original writ; and if any thing was due from the company, was it in cash or stock?

The contract price for constructing the roads, according to articles of agreement, was the sum of $287,000, including the sum of $29,000 for land damages for the railroad, depots, station-houses, and other buildings. The railroad company contracted that they would settle all land damages, and deduct therefor, from the payment to be paid the contractors, the said sum of $29,000, and it was further agreed and understood that, in the settlement and adjustment of the damages aforesaid, the company shall use all reasonable diligence and dispatch, and, if any delay shall arise in the prosecution of the work, by reason of legal proceedings, in the settlement of said damages, the company shall not be holden for any damages on account thereof.

The plaintiff insists that the contract price was really the sum of $258,000, and the company were to settle the land damages. The company, on the other hand, insist that the whole sum of $29,000 should, in making up the payments made by the company, be allowed as paid. We think neither ground the correct one. As we have seen, the company were to be diligent in the settlement and adjustment of these damages, so that the contractors should not be delayed. And we see no reason for any objection to the allowance of such sum, on this account, as was actually paid before the service of the process upon the trustee. It was paid, and, by the contract, was to be deducted from the full contract price.

The balance of the land damages cannot be treated as actually paid by the company, when no part thereof had been paid. They were bound to pay these damages, if the road

was constructed, to the owners of the land, and unless payment was made seasonably, or the company had acquired title to the land, or had obtained license in some mode, the contractors might also be liable. It was not certain that the trustee would pay the balance. The portion of the $29,000, as land damages, not paid at the time of the service of the writ upon the company, cannot be treated as a payment in this process.

The treasurer of the company paid to the contractors on October 10, 1854, the day on which the trustee was served with the writ, the sum of $11,067,55. There is no evidence, whatever, that he had not knowledge of this service before the payment was made. The exact time of the service being stated in the return, is to be regarded earlier than the payment on the same day, without evidence of the particular time of day when the money was paid. *Fairfield* v. *Paine*, 23 Maine, 498. This payment cannot injuriously affect the plaintiff.

It is provided in the contract, that, on or about the first day of each month, the engineer shall estimate the quantity of work done, and give a certificate of the same, and, within ten days after the presentation of such certificate, the corporation will pay the contractors, in whose favor such certificate may be given, eighty per cent. of the amount then due for work specified in such certificate, and when the whole of the work contracted for shall have been accepted as completed according to the contract, the balance due shall be paid to the contractors.

In looking at the monthly estimates and payments, as they appear by the disclosure, it is manifest that, for a large portion of the time, the company paid in cash eighty. per cent. found due by the certificates of the engineer. It is hence contended by the plaintiff that the company waived the right to make payment in stock, to the amount that they were authorized to do; and that the money was paid instead of stock, and the substitution cannot now be recalled.

By the contract, the contractors bound themselves to receive in payment $75,000 in stock at par value; and twenty

Harris *v.* Somerset and Kennebec Railroad Company.

per cent. of the contract price, which was to be withheld each and every month, till the completion of the road, as security for the fulfilment of the contract on the part of the contractors, was to make a part of this sum, and to be paid in stock. This obligation to take, in the whole, $75,000 in stock, was never directly cancelled or modified. The contract is silent as to the time when stock should be paid in discharge of that portion of the monthly indebtedness, to be paid in stock. The sums due at the end of each month materially varied one from another. It was hardly to be expected that a stock certificate would be made each month for the exact sum which was to be so paid. If the company were willing to pay the eighty per cent. in cash, on each monthly certificate, it cannot now be treated as an act which binds the company absolutely. No consideration was paid therefor by the contractors; and it is in evidence that the stock in the market was far below par. We cannot doubt that the company were willing to pay, and the contractors were willing to receive, the part to be paid monthly, in cash; and, afterwards, that stock certificates should be delivered, in accordance with the stipulations in the articles of agreement.

According to the views expressed in the foregoing remarks, at the time of the service of the writ upon the trustee, the contractors had received more than six thousand one hundred and fifty dollars, in cash, which the company were entitled to pay in stock. But, at the same time, more than eight thousand five hundred dollars was due in stock from the company. From this sum, deducting the excess of cash actually paid, leaves a balance payable in stock, due the contractors, of a sum not exceeding two thousand three hundred and seventy dollars, which is short of that offered by the officers of the company to the sheriff who made the demand on the execution. The twenty-six shares of the stock are to be regarded as in the sheriff's hands, for the benefit of the plaintiff.

*Judgment for the defendants.*

RICE, APPLETON, CUTTING, MAY and GOODENOW, JJ., concurred.